## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

_____
)
**JOHN RESTIVO and DENNIS HALSTEAD,**    )
)
    **Plaintiffs,**    )
)
        **v.**    )        **COMPLAINT AND**
)        **JURY DEMAND**
**NASSAU COUNTY, a municipality; NASSAU**    )
**COUNTY ATTORNEY'S OFFICE; CARNELL**    )    **16-cv-2492**
**FOSKEY, in his official capacity; LISA**    )
**LOCURTO; ESTHER MILLER; ROBERT F.**    )
**VAN DER WAAG; SONDRA M. MENDELSON**    )
**LIORA BEN-SOREK; and MICHAEL**    )
**FERGUSON,**    )
)
    **Defendants.**    )
_____ )

Plaintiffs John Restivo and Dennis Halstead, by and through their attorneys, the law firm of Neufeld Scheck & Brustin, LLP, state as follows:

### INTRODUCTION

1.    In 2014, a federal jury found former Nassau County Police Department Detective Joseph Volpe liable for maliciously prosecuting John Restivo and Dennis Halstead and depriving them of a fair trial for a rape and murder they did not commit. The jury awarded Mr. Restivo and Mr. Halstead $18 million each in damages for the eighteen years they spent wrongly imprisoned (the "Civil Rights Lawsuit"). Judgment was entered against the Estate of Joseph Volpe, who died during the litigation.

2.    Over nearly 8 years of litigation, Nassau County directed the defense of the Civil Rights Lawsuit and represented that it would indemnify all individual defendants, including Mr. Volpe. Nassau County had represented Mr. Volpe and ultimately represented his Estate.

3.      Reasonably relying on Defendants' representations, John Restivo and Dennis Halstead expended considerable resources litigating the Civil Rights Lawsuit. Plaintiffs also made a number of strategic decisions—including voluntarily dismissing their claim directly against Nassau County and claims against other individual defendants—in reliance on Nassau County's indemnification representation.

4.      Defendants' representations induced Plaintiffs to believe that they would be able to collect on a judgment in the Civil Rights Lawsuit, even if that judgment was against an individual defendant like the Estate of Volpe and not against Nassau County itself.

5.      However, after the $36 million judgment was entered against the Estate of Joseph Volpe, Nassau County, the Nassau County Attorney's Office, and the Individual Defendants in this suit (Defendants LoCurto, Miller, Van der Waag, Mendelson, Ben-Sorek, and Ferguson) conspired to escape Nassau County's indemnification obligation.

6.      In furtherance of this scheme, individual Defendants acting at the behest of and as agents of Nassau County fraudulently misrepresented key facts, took unsupportable legal positions, and concealed evidence from John Restivo, Dennis Halstead, and the court.

7.      When evidence of this fraudulent scheme first came to light, Defendants conspired to conceal their misconduct by representing that Nassau County had not, in fact, represented that it would indemnify (or had an obligation to indemnify) the Estate of Joseph Volpe. These statements were false.

8.      Though Nassau County has now entered into a binding stipulation that it will fully indemnify the Estate of Joseph Volpe in connection with the Civil Rights Lawsuit, upon information and belief, Nassau County may not intend to comply with that stipulation.

9.     Specifically, Nassau County recently rejected an agreement proposed by Plaintiffs (the "Tolling Agreement"), under which Plaintiffs would agree not to bring certain claims against Nassau County and its agents so long as Nassau County complied with its indemnification obligation in the Civil Rights Lawsuit. As Nassau County's only obligation under the Tolling Agreement would have been to comply with its *preexisting* indemnification obligation, the only reason for Nassau County to reject the Tolling Agreement is if it did not actually intend to indemnify the Estate of Volpe or intended to otherwise not comply with its court-ordered obligations, for example by delaying payment to Plaintiffs. Thus, Nassau County's rejection of the Tolling Agreement is evidence that the fraud and misrepresentations may well continue into the future—and of Nassau County's intent not to comply with its obligation under the law, its contract with Volpe, or the court's orders.

10.     Defendants' misconduct has injured Mr. Restivo and Mr. Halstead by causing them to expend extra resources to ensure Nassau County complies with its indemnification obligations, tricking them into giving up a cause of action against Nassau County and causes of action against other individual defendants, and causing them extreme and continuing emotional distress and anxiety. If Nassau County attempts to delay payment to Plaintiffs or does not actually comply with its indemnification obligation, the fraud will have damaged Plaintiffs in the total amount of the judgment, costs, and fees owed to them in the Civil Rights Lawsuit—up to approximately $43 million.

11.     Under Judiciary Law § 487, Plaintiffs are entitled to treble damages, and would seek full damages in the amount of $129 million to hold Nassau County and the individual defendants responsible for their egregious pattern of dishonesty, misrepresentation, and fraud.

## JURISDICTION AND VENUE

12.     This Court has diversity jurisdiction, pursuant to 28 U.S.C. § 1332, as the amount in controversy in this matter exceeds $75,000 exclusive of interest and costs, and as the matter is between parties who are citizens of different States. Plaintiffs John Restivo and Dennis Halstead are domiciled in and citizens of Florida, and each of the Defendants resides in and is a citizen of New York.

13.     Plaintiffs have complied with the requirements of New York General Municipal Law Section 50-i by making and serving a notice of claim on the County of Nassau on March 19, 2015, within the time required by New York General Municipal Law Section 50-e.  More than thirty days have elapsed since the service of that notice, and no offer of settlement has been made.

14.     Defendants did not request that Plaintiffs John Restivo and Dennis Halstead submit to a hearing pursuant to New York General Municipal Law Section 50-h.

15.     Pursuant to 28 U.S.C. § 1391(b), venue is proper in the Eastern District of New York, the judicial district in which the claims arose.

## JURY DEMAND

16.     Pursuant to the Seventh Amendment of the United States Constitution, Plaintiffs request a jury trial on all issues and claims set forth in this Complaint.

## PARTIES

17.     Plaintiff John Restivo is and was at all times relevant to this Complaint a citizen and resident of the State of Florida.  He currently lives in Vero Beach, Florida.

18.     Plaintiff Dennis Halstead is and was at all times relevant to this Complaint a citizen and resident of the State of Florida.  He currently lives in Tallahassee, Florida.

19.     Defendant Lisa LoCurto was at all times relevant to this Complaint a Chief Deputy County Attorney employed by Nassau County and the Nassau County Attorney's Office, acting in her individual capacity as a County employee and within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of the Nassau County and the Nassau County Attorney's Office. Upon information and belief, she is entitled to indemnification under Nassau County Administrative Code § 22-2.8.

20.     Defendant Esther Miller was at all times relevant to this Complaint a Deputy County Attorney/Litigation Bureau Chief employed by Nassau County and the Nassau County Attorney's Office, acting in her individual capacity as a County employee and within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of Nassau County and the Nassau County Attorney's Office. Upon information and belief, she is entitled to indemnification under Nassau County Administrative Code § 22-2.8.

21.     Defendant Robert F. Van der Waag was at all times relevant to this Complaint a Deputy County Attorney/Appeals Bureau Chief employed by Nassau County and the Nassau County Attorney's Office, acting in his individual capacity as a County employee and within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of Nassau County and the Nassau County Attorney's Office. Upon information and belief, he is entitled to indemnification under Nassau County Administrative Code § 22-2.8.

22.     Defendant Sondra M. Mendelson was at all times relevant to this Complaint a Deputy County Attorney employed by Nassau County and the Nassau County Attorney's Office, acting in her individual capacity as a County employee and within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of Nassau County and the Nassau County Attorney's Office. Upon information and belief, she is entitled to

indemnification under Nassau County Administrative Code § 22-2.8.

23.     Defendant Liora Ben-Sorek was at all times relevant to this Complaint a Deputy County Attorney employed by Nassau County and the Nassau County Attorney's Office acting in her individual capacity as a County employee and within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of Nassau County and the Nassau County Attorney's Office. Upon information and belief, she is entitled to indemnification under Nassau County Administrative Code § 22-2.8.

24.     Defendant Michael Ferguson was at all times relevant to this Complaint a Deputy County Attorney employed by Nassau County and the Nassau County Attorney's Office, acting in his individual capacity as a County employee and within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of Nassau County and the Nassau County Attorney's Office. Upon information and belief, he is entitled to indemnification under Nassau County Administrative Code § 22-2.8.

25.     Defendant Nassau County is a municipality that is a political subdivision of the State of New York, was the employer of the individual defendants, and is and was at all times relevant to this Complaint responsible for the policies, practices, and customs of the Nassau County Attorney's Office.

26.     Defendant Carnell Foskey, sued in his official capacity, is the Nassau County Attorney and supervises the Nassau County Attorney's Office, which is a department of Nassau County. With Defendant Nassau County, Foskey and/or the Nassau County Attorney's Office was the employer of the individual defendants, and is and was at all times relevant to this Complaint responsible for the policies, practices, and customs of the Nassau County Attorney's Office.

## FACTS

### The Civil Rights Lawsuit and Nassau County's
### Agreement to Indemnify Joseph Volpe and His Estate

27.     Filed in December 2006, Mr. Restivo and Mr. Halstead's suit had been litigated by the Nassau County Attorney's Office and outside counsel retained by Nassau County for over seven years by the time of the 2014 verdict.

28.     Mr. Volpe died in January 2011; Carolann Hesseman as Executrix of the Estate of Joseph Volpe was substituted as a party in March 2011, and was represented by the Nassau County Attorney's Office and outside counsel retained by Nassau County throughout the litigation.

29.     Nassau County has an obligation to indemnify Volpe and his Estate for all damages, costs, and fees stemming from the Civil Rights Lawsuit.

30.     Throughout the litigation, Nassau County acted through its agents, including the Nassau County Attorney's Office, the individual Defendants in this suit, and outside counsel to represent to the Court, to the plaintiffs John Restivo and Dennis Halstead, and to Carolann Hesseman as the Executrix of the Estate of Joseph Volpe, that Nassau County would fully indemnify Joseph Volpe and/or the Estate of Joseph Volpe for any damages stemming from the Civil Rights Lawsuit.

31.     Specifically, on or about January 11, 2007—at the inception of Mr. Restivo and Mr. Halstead's 42 U.S.C. § 1983 suit against Nassau County and Volpe—Esther Miller, Litigation Bureau Chief for the Nassau County Attorney's Office, sent Joseph Volpe a letter through counsel for the Commissioner of the Nassau County Police Department, Deputy County Attorney Tatum J. Fox.

7

32.    In that letter, which is based on a form letter used by Nassau County and the Nassau County Attorney's Office in all suits against Nassau County employees, Miller explained to Volpe the County's statutory obligations to provide him legal representation and indemnify him under New York Gen. Mun. L. § 50-l and the Nassau County Admin. Code § 22-2.8.

33.    The letter offered to provide Volpe representation, free of charge, conditioned on Volpe's agreement to let the Nassau County Attorney's Office have full control over the litigation.

34.    The letter also informed Volpe that, should the Police Officer Indemnification Board determine that Volpe acted within the scope of his employment or duties, "the County will indemnify you for any award of damages against you."

35.    Volpe signed the letter under the words "agreed and accepted," and returned it to Nassau County.

36.    From that point on, Nassau County controlled all litigation on Volpe's behalf.

37.    In January 2007, Deputy County Attorneys Sondra M. Mendelson and Liora Ben-Sorek presented the Police Officer Indemnification Board with the County's position regarding the facts and law involved in Mr. Restivo and Mr. Halstead's case.

38.    On February 9, 2007, the Police Officer Indemnification Board determined that "the acts alleged were committed while in the proper discharge of said officer(s)' duties and within the scope of his/her employment."

39.    After Joseph Volpe passed away during the litigation, Plaintiffs sought information from Nassau County regarding the identity of the executor or administrator of the Estate, so that Plaintiffs could substitute the proper representative of the Estate in the litigation. Nassau County suggested that no representative need be named, and that "Joseph Volpe" could

simply be renamed "the Estate of Volpe," as Nassau County itself was the true party in interest due to its indemnification obligation. However, Plaintiffs insisted on substitution of the actual representative of the Estate, and moved to substitute the executrix of the Estate of Joseph Volpe as a defendant in the case.

40.     As a result of Plaintiffs' requests for information about the representative of the Estate, Probate attorney Mark Brosnan, who represented Carolann Hesseman during the probate of Mr. Volpe's will, was contacted by Defendant Michael Ferguson in approximately March 2011. Mr. Ferguson advised Mr. Brosnan that Plaintiffs wanted to substitute Ms. Hesseman, as the successor in interest to Mr. Volpe, in the Civil Rights Lawsuit.

41.     Mr. Ferguson told Mr. Brosnan that all of the defendants were fully indemnified by the County, including Mr. Volpe and his Estate. In processing the estate, Mr. Brosnan acted based on this representation from the County that there was no risk to the Estate's assets.

**Nassau County Consistently Represents to Plaintiffs that
It Will Indemnify Volpe and His Estate**

42.     None of the documents related to the indemnification agreement or the Police Officer Indemnification Board's determination that Mr. Volpe was acting within the scope of his employment were provided to Plaintiffs in discovery. Lawyers acting on behalf of Nassau County asserted privilege over any documents related to indemnification.

43.     However, in response to Plaintiffs Restivo and Halstead's initial discovery requests, in July 2007, Deputy Nassau County Attorney Liora Ben-Sorek answered, on behalf of all defendants, "please be informed that the defendants have been indemnified," and produced a copy of § 22-2.8 of the Nassau County Administrative Code.

44.     For the next eight years, from entry of the Nassau County Attorney's Office's notices of appearance through discovery and two trials, Nassau County consistently and

unambiguously maintained that it had fully indemnified all the individual defendants, including Volpe and his Estate.

45.     The County made these representations of indemnification to Volpe and later his Estate in order to represent him and direct the litigation.

46.     The County also made these indemnification representations to Plaintiffs Mr. Restivo and Mr. Halstead, and the United States District Court for the Eastern District of New York, in discovery responses, oral communications, and appearances before the Court on behalf of the County and Volpe and his Estate.

47.     Reasonably and foreseeably relying on Defendants representations that Nassau County would indemnify all of the individual defendants in the Civil Rights Lawsuit, and thus that Plaintiffs would be able to actually recover the amount of a judgment, Plaintiffs voluntarily dismissed their claim pursuant to *Monell v. Dep't of Social Servs. Of the City of New York*, 436 U.S. 658 (1978), after it had been affirmed on summary judgment, via which Plaintiffs could have held Nassau County directly liable for the civil rights violations.

48.     Plaintiffs also made numerous other strategic litigation decisions in reliance on Nassau County's indemnification representations, including dismissing claims against other individual defendants.

### Nassau County Knowingly Lies to Escape Its Indemnification Obligation and Deceive the Court and Plaintiffs

49.     After a federal jury found Defendant Volpe liable and judgment entered against the Estate for $36 million, the County, through its policymakers, sought means to escape its indemnification obligation and agreement.

50.     In so doing, a number of County policymakers, employees, and sub-contractors knowingly made material misrepresentations to Plaintiffs, the Estate, and the Court in an attempt

to avoid the County's obligation. Still others colluded to effectuate the deception, or consented in the deception and/or attempted deception of the parties and the Court, which was used on behalf of the County and to further its interests.

51.    Because of Defendants' misrepresentations and other efforts to conceal Nassau County's decision, apparently made after the judgment was entered in favor of Plaintiffs in the Civil Rights Lawsuit, not to comply with its indemnification obligations, Plaintiffs did not discover evidence of Defendants' fraud or other misconduct until February 17, 2015.

52.    Nassau County made multiple misrepresentations to Plaintiffs, after the judgment became due, indicating that it would comply with its indemnification obligation—although it did not actually intend to comply with its obligation at that time.

53.    Specifically and by way of example, after indicating that it would appeal the judgment in the Civil Rights Lawsuit and seek a stay of the district court proceedings, Nassau County represented to Plaintiffs that it would post a supersedeas bond in the amount of the judgment. After significant delay, Plaintiffs repeatedly inquired about the bond, but Nassau County and its agents assured Plaintiffs that Nassau County intended to post the bond pursuant to its indemnification obligation. However, at this time of these misrepresentations, upon information and belief Nassau County did not actually intend to post a supersedeas bond because it did not intend to comply with its indemnification obligation.

54.    Because Plaintiffs accepted as true Nassau County's representations that it was working on posting the supersedeas bond—and that any delay was simply due to the complexity of the process—Plaintiffs agreed to put off instituting proceedings to collect on their judgment.

55.    However, on February 17, 2015, Defendant filed a Motion to Stay Judgment Pending Appeal which suggested that Nassau County may have no obligation to indemnify the

Estate of Joseph Volpe. This was the first evidence that Plaintiffs discovered suggesting that Defendants may be engaging in dishonest and fraudulent behavior by planning to not comply with Nassau County's obligations to fully indemnify Volpe in connection with the Civil Rights Lawsuit.

56.     At this time, Plaintiffs had an enforceable judgment in the amount of $36 million plus interest, costs, and attorney's fees, against the Estate of Joseph Volpe. Pursuant to its indemnification obligation, Nassau County was obligated to satisfy this judgment.

57.     Plaintiffs, through the exercise of reasonable diligence, could not have discovered the fraudulent scheme before February 17, 2015 because of Defendants' efforts to conceal it.

58.     After February 17, 2015, when Plaintiffs brought the issue to the attention of the court and began to make efforts to protect their interests and ensure indemnification, Nassau County and its agents continued to make false statements that misrepresented and concealed the true nature of their indemnification obligation.

59.     In a letter from Lou Freeman, outside counsel retained by Nassau County, to Plaintiffs' counsel dated February 27, 2015, Mr. Freeman strenuously denied that Nassau County had any contractual obligations to Volpe or his Estate. Upon information and belief, this representation was made based on Mr. Freeman's communication with Nassau County and certain individual Defendants.

60.     In response to Plaintiffs' demand that Nassau County produce a copy of its Indemnity Agreement with Volpe, the letter asserted "*the County has never entered into an indemnity agreement with Detective Volpe or the Volpe Estate*." (emphasis added). It also referred to the Volpe Indemnity Agreement as "nonexistent."

61.     However, these statements were untrue. Nassau County, through its agent Mr. Freeman, knowingly made this misrepresentation in order to conceal from Plaintiffs the true nature of its indemnification obligation.

62.     After Plaintiffs located what appeared to be a form indemnification contract from the Nassau County Attorney's Office to another police officer in public filings for a different case, Plaintiffs wrote to Mr. Freeman and requested he, as the attorney for Nassau County, produce any such document from this case. Plaintiffs then directed Mr. Freeman to an entry in the County's privilege log created by Freeman, Nooter & Ginsberg that appeared to cover these indemnification agreements.

63.     Later that night, another outside counsel for Nassau County, associate Nadjia Limani, produced the contract—the letter signed by Defendant Esther Miller and Mr. Volpe, dated January 11, 2007—that Mr. Freeman on behalf of the County had claimed did not exist. Nassau County and the individual Defendants knew that this contract existed, and that these false statements were based on communications with the Defendants.

64.     Mr. Freeman and his associate knew this contract existed—they were responsible for the privilege log withholding the contract and other indemnification documents. Ms. Miller, who signed it, knew the contract existed.

65.     And upon information and belief any Nassau County Attorney with whom Mr. Freeman and his associate consulted knew that there would be such a contract; upon information and belief it is a form letter sent out in each case and, without such a contract, the Nassau County Attorney's Office would have no basis to represent a defendant.

66.     John Restivo and Dennis Halstead, as Plaintiffs with a judgment against the Estate of Joseph Volpe, are the intended third-party beneficiaries of the Indemnity Agreement between

13

Nassau County and Joseph Volpe, which was executed for the specific purpose of indemnifying Volpe in connection with Mr. Restivo and Mr. Halstead's claims against him.

**Nassau County Induced the Estate of Joseph Volpe to Rely on its Representations that it Would Indemnify the Estate, then Breached the Indemnity Agreement by Informing the Estate that It Would Not Honor Its Indemnification Obligations**

67.     In repeated letters and briefings, including in a filing with the District Court on March 9, 2015, Mr. Freeman on behalf of the County insisted that the County had never considered the question of indemnification of a police officer's estate and never made a promise to indemnify Mr. Volpe's Estate. Mr. Freeman, his associate, and Deputy County Attorney Michael Ferguson, as well as upon information and belief other members of the Nassau County Attorney's Office, knew this representation to be false.

68.     At a hearing before the District Court on March 17, 2015, probate attorney Mark Brosnan, who represented Carolann Hesseman during the probate of Mr. Volpe's will, informed the Court of a conversation he had with Michael Ferguson in 2011 and a second conversation he had with Mr. Freeman and his associate in 2015.

69.     Mr. Brosnan told the Court that, in approximately March 2011, he was contacted by a lawyer from the Nassau County Attorney's Office, Michael Ferguson. Before that call, Mr. Brosnan had no information about any civil rights lawsuit involving Mr. Volpe.

70.     Mr. Ferguson informed Mr. Brosnan that Mr. Volpe had been a named defendant in a civil rights lawsuit, and that the plaintiffs wanted to substitute the fiduciary of his estate, Ms. Hesseman, as the successor in interest to Mr. Volpe.

71.     During this phone call, Mr. Ferguson told Mr. Brosnan that all of the defendants were fully indemnified by the County, including Mr. Volpe and his Estate. Ferguson stated, in

substance, that the Estate did not have to worry about any risk to its assets because the County was indemnifying it.

72.    Mr. Brosnan reported he had made notes of this conversation at the time, and that he had subsequently acted based on this representation from the County that there was no risk to the Estate's assets.

73.    In approximately late January or early February 2015, Mr. Brosnan was contacted by lawyer for Nassau County Louis Freeman and his associate. Mr. Freeman and his associate informed him, in substance, that there was a $36 million judgment against the Estate and that the County was going to question its indemnification obligations. During this conversation, Mr. Brosnan informed Mr. Freeman and his associate that he had been promised, by Nassau County Deputy County Attorney Michael Ferguson, in 2011, that the Estate would be fully indemnified and that there was no risk to the Estate's assets.

74.    Despite their actual knowledge of the existence of a direct promise to indemnify the Estate, the County and its attorneys represented to Plaintiffs and to the Court that the County had never considered whether it could indemnify a deceased police officer's estate before the verdict was entered against Mr. Volpe's Estate.

75.    In addition to making false statements to the Court and Plaintiffs, Nassau County's pattern of misconduct included making filings with the Court nominally on behalf of Carolann Hesseman as Executrix of Joseph Volpe's Estate that were actually made to advance the interests of Nassau County, and indeed were *directly adverse* to the interests of the Estate.

76.    Upon information and belief, these filings, including but not limited to Defendants' motions for a stay of enforcement of judgment, which disclaimed Nassau County's indemnification obligation and directed Plaintiffs to seek satisfaction of their judgment from the

Estate directly, were made without ever consulting with Ms. Hesseman, let alone receiving her consent.

77.    Even though Plaintiffs alerted the County's lawyers that this filing appeared to create an unwaivable conflict of interest, the County's lawyers denied there was any such conflict in their papers and continued to file papers nominally on behalf of the Estate.

**Nassau County Also Knowingly Misrepresents the Law in an Attempt to Escape its Indemnification Obligations**

78.    In their Motion for a Stay of Enforcement of the Judgment, the County and its attorney Mr. Freeman and his associate, nominally on behalf of the Estate but in fact as agents of Nassau County, falsely represented that there was a question as to whether the County was legally able to indemnify a police officer's estate.

79.    They represented to Plaintiffs and submitted to the Court, in Court filings, that Gen. Municipal Law § 50-l was silent as to the treatment of estates, and that while Nassau County Administrative Code § 22-2.8, which covers all County employees, defines employee to include estates, § 22-2.8 did not apply to police officers.

80.    But the Nassau County Attorney's Office and the County's attorney Mr. Freeman and his associate knew this "legal" argument was both false and disingenuous. In the very letter Nassau County sends to police officers at the outset of litigation against them to inform of their rights, the Nassau County Attorney's Office form letter reads, for example: "As a County employee, you are entitled, *pursuant to the Nassau County Administrative Code § 22-2.8*, to legal representation provided by the County . . . ."

81.    On information and belief, Mr. Freeman, his associate, and other lawyers representing Nassau County have made similar misrepresentations to lawyers acting on behalf of

the Estate, including Mr. Brosnan, in an attempt to prevent the Estate from acting on its rights to enforce the indemnification agreement.

**Nassau County Directed and is Responsible for this Fraudulent Scheme**

82.     Upon information and belief, all of this deceptive conduct occurred with the knowledge and consent of the attorneys at the highest levels of the Nassau County Attorney's Office.

83.     Mr. Freeman has represented that he consulted with members of the Nassau County Attorney's Office, who directed this strategy. All acts taken by the firm Freeman, Nooter & Ginsberg in connection with the Civil Rights Lawsuit were directed by Nassau County and based on communications with Nassau County and the individual Defendants.

84.     Ms. Ben-Sorek, who entered an appearance on behalf of all defendants in this case in February 2007, is automatically served with every filing made in the district court in the Civil Rights Lawsuit, as is the general Nassau County Attorney's Office email address.

85.     Ms. LoCurto, the Chief Deputy County Attorney, provided a declaration in support of the supplemental motion to stay judgment, one of the motions filed in the name of Ms. Hesseman but which made arguments contrary to her interests.

86.     In advance of the March 17, 2015 hearing before the district court in the Civil Rights Lawsuit on the conflict of interest created by Nassau County's change of position, the Court ordered that "[a] representative of the County Attorney's Office who has decision-making authority" appear at the conference. Mr. Van Der Waag appeared at the conference and represented to the Court that he had authority to bind the County.

87.     Mr. Van Der Waag did not correct any of the many misstatements and misrepresentations above. Instead, Mr. Van Der Waag, on behalf of Nassau County, made new

misrepresentations in support of the County's effort to evade its responsibility to pay the judgment. These included that any indemnification obligation was limited to the assets in the Estate, and that the County could reconvene the Police Officer Indemnification Board to vote again on whether Mr. Volpe's acts were within the scope of employment, once the Second Circuit affirmed the jury verdict.

88.     Each of these representations is contrary to the settled understanding of the Nassau County Attorney's Office and the settled practice of Nassau County in how it has handled indemnification for the past 30 years.

### Discovery of Defendants' Fraud Necessitates Additional Litigation to Ensure Indemnification

89.     After Plaintiffs became aware that Nassau County might attempt to evade its indemnification obligations, Plaintiffs diligently made every effort to protect their interests and their entitlement to the judgment awarded by the jury in the Civil Rights Lawsuit.

90.     On February 26, 2015, Plaintiffs served a formal demand notice for prompt payment of that judgment on the Estate of Joseph Volpe, and on Nassau County as indemnitor.

91.     On March 9, 2015, Plaintiffs filed a petition, pursuant to Fed. R. Civ. P. 69(a) and N.Y. CPLR § 5227, asking the Court to compel Nassau County, as the Volpe Estate's indemnitor, to pay Plaintiffs the debt—in the full amount of the judgment, including costs, interest, and attorney's fees—which Nassau County owed to the judgment debtor the Estate.

92.     The Court held a hearing in the Civil Rights Lawsuit on March 17, 2015, at which Defendants again changed its position on indemnification and misrepresented key facts to the Court and the parties. These additional false statements caused Plaintiff to file an additional legal briefing—a Supplement to the N.Y. CPLR § 5227 Petition, filed on March 30, 2015.

93.     Defendants repeatedly opposed Plaintiffs' attempts definitively to establish that Nassau County was obligated to pay the judgment. This baseless opposition caused Plaintiffs to file additional legal briefings to protect their interests.

94.     In total, Plaintiffs' attorneys spent hundreds of hours litigating the indemnification issue in an attempt to ensure that Plaintiffs could actually collect on their judgment.

95.     Additionally, Defendants' misconduct made it necessary for Plaintiffs' attorneys to consult with additional attorneys, including David Graff and Rachael Ann Kierych of Anderson Kill P.C., in order to protect their interests, causing Plaintiffs to incur thousands of dollars in additional legal fees.

96.     Meanwhile, the defendants in the Civil Rights lawsuit appealed Plaintiffs' judgment to the Second Circuit Court of Appeals. The parties await a decision from that court. The judgment has become due, but Plaintiffs agreed, pursuant to a Stipulation and Consent Decree, not to demand payment until the appeal is resolved.

**Defendants' Misconduct Causes Mr. Restivo and Mr. Halstead Extreme Emotional Distress**

97.     The Civil Rights Lawsuit was lengthy, emotionally draining, and costly. Plaintiffs filed their Complaint in 2006 and did not receive a judgment in their favor until 2014. The case is still not resolved, as the defendants have appealed that judgment.

98.     Dennis Halstead and John Restivo suffer from extreme emotional damage from their wrongful conviction and 18-year incarceration for the rape and murder of a teenage girl—damage that a jury found was caused by a Nassau County detective.  The protracted Civil Rights Lawsuit forced Mr. Halstead and Mr. Restivo to relive these traumatic experiences, causing extreme emotional distress, anxiety, and fear.

99.     Actions taken by Defendants and/or their agents during the Civil Rights Lawsuit—including but not limited to repeatedly accusing Mr. Restivo and Mr. Halstead of a crime they did not commit and (even as recently as this year) falsely calling Mr. Restivo and Mr. Halstead pedophiles and child molesters—also caused Plaintiffs significant emotional distress.

100.     Mr. Restivo and Mr. Halstead bore these indignities, suffered the emotional damage they caused, and undertook this costly litigation because Nassau County had indicated that it would indemnify all defendants—thus reasonably giving Mr. Restivo and Mr. Halstead the belief that they would be able to collect on a judgment in their favor.

101.     Defendants' assertion for the first time, *after* the jury had awarded a large judgment to Plaintiffs, that they may not indemnify the Estate of Volpe caused Plaintiffs extreme emotional harm.

102.     For Plaintiffs, who were wrongfully imprisoned for 18 years and deprived of control over their lives, the uncertainty caused by this change in position caused uniquely extreme anxiety and distress that is separate from the emotional distress that had been previously caused by litigating the Civil Rights Lawsuit.

### Nassau County Finally Agrees to Honor its Obligations

103.     Before its response to Plaintiffs' N.Y. CPLR § 5227 Petition was due, Nassau County and/or its agents contacted Plaintiffs and offered to enter into a binding stipulation that it would pay the full amount of the judgment against the Estate of Volpe. It represented that Nassau County's indemnification board had reconvened and affirmed that Nassau County would indemnify Volpe's Estate.

104.     The parties spent time negotiating the precise terms of the stipulation.

105.    On June 25, 2015, John Restivo and Dennis Halstead, and Carolann Hesseman, as Executrix for the Estate of Joseph Volpe, and the County of Nassau entered into a Stipulation and Consent Decree, in which the County of Nassau agreed, *inter alia*, that it is indemnifying the Estate for any judgment arising out of the Civil Rights Lawsuit and entered in favor of Plaintiff and against the Estate. It further agreed to pay to the Plaintiffs the complete amount of any final judgment entered in favor of Plaintiffs and against the Estate—including costs and fees—within one hundred and twenty (120) days of the appeal (Docket # 14-4662) being concluded.

106.    In exchange for Nassau County's promise to pay the full amount of any judgment entered against Carolann Hesseman, as Executrix for the Estate of Joseph Volpe, Plaintiffs agreed to dismiss their cross-appeal of the dismissal of Plaintiffs' *respondeat superior* claim against Nassau County, which would have provided a basis for Nassau County to be held directly and financially responsible for the judgment.

107.    The Stipulation and Consent Decree was ordered by the District Court on July 1, 2015.

### Nassau County Then Refuses to Agree to Honors its Obligations, Suggesting Continuing Fraud

108.    Upon information and belief, the deceptive conduct of each of the individual attorneys and by the County, through its policymakers, is ongoing.

109.    In May 2016, counsel for John Restivo and Dennis Halstead approached counsel for Nassau County with a proposed Tolling Agreement.

110.    In the Tolling Agreement, Mr. Restivo and Mr. Halstead asked that Nassau County agree to toll the statute of limitations that would otherwise apply to the claims set forth against the  Defendant Parties in Plaintiffs' Notice of Claim filed on March 19, 2015, until sixty

days after the date by which Nassau County must pay to Plaintiffs the complete amount of any final judgment against Carolann Hesseman as Executrix of the Estate of Joseph Volpe,

111.    In exchange for Defendants' agreement to toll the statute of limitations, Plaintiffs offered to forever relinquish the claims referenced in their Notice of Claim, so long as Nassau County simply satisfied its obligation—should the Second Circuit decide the appeal in Plaintiffs' favor and the judgment becomes final—to pay to John Restivo and Dennis Halstead the full amount of the judgment, costs, fees, and interest by the date Nassau County had previously agreed to do so.

112.    Although under the Tolling Agreement Nassau County's obligations would have been precisely the same as under the Stipulation and Consent Decree—*i.e.*, that they would have to comply with their indemnification obligation—Nassau County refused to enter into the Tolling Agreement.

113.    Because this decision not to enter into the Tolling Agreement was not rational based on the facts known to Plaintiffs about the parties' obligations, upon information and belief this decision is evidence of an ongoing fraudulent scheme to conceal from Plaintiff Nassau County's intent not to abide by the Stipulation and Consent Decree and its preexisting indemnification obligation, for example by delaying payment or refusing payment altogether.

## DAMAGES

114.    As a result of the County and the individual defendants' deceptive actions in first promising unambiguous indemnification, and then denying the County's indemnification obligations, Mr. Restivo and Mr. Halstead have suffered ongoing damages.

115.    Mr. Restivo and Mr. Halstead have suffered economic damages, including but not limited to the costs and attorney's fees incurred in the actions necessary to enforce Mr. Restivo and Mr. Halstead's rights.

116.    Specifically, Defendants' tortious conduct damaged Plaintiffs by creating the necessity for additional litigation in the Civil Rights Lawsuit regarding the issue of whether Nassau County would actually indemnify Volpe and/or the Estate of Volpe. Plaintiffs' attorneys spent hundreds of additional hours litigating this issue and conferred with other attorneys about the matter, generating approximately $150,000 in additional and otherwise unnecessary attorney's fees.

117.    Defendants' misconduct caused economic damages incurred due to the delay in the payment of Mr. Restivo and Mr. Halstead's lawful judgment. Any future delay in payment of the judgment, interest, attorney's fees, and costs owed to Plaintiffs will cause further economic damage.

118.    Defendants' misconduct also caused economic damages in the amount of the potential loss—should the fraud succeed—of the $43 million owed to Plaintiffs from the judgment, costs, interests, and attorney's fees, in the Civil Rights Lawsuit.

119.    Defendants' misconduct also damaged Mr. Restivo and Mr. Halstead by inducing them to relinquish two causes of action asserted directly against Nassau County, which caused significant economic injury. Defendant's fraudulent misconduct also induced Mr. Restivo and Mr. Halstead to make strategic litigation decisions that they would not have made absent Defendants' misconduct and concealment of that misconduct.

120.    In addition to the economic damage caused, Defendants' acts caused Mr. Restivo and Mr. Halstead severe, extreme, and outrageous emotional damage, as described above.

121.    Under Judiciary Law § 487, Plaintiffs are entitled to treble damages, in the amount of up to $129 million, should Nassau County fail to comply with its indemnification obligation by refusing to pay Plaintiffs or delaying payment. Under Judiciary Law § 487, Plaintiffs are entitled to treble damages for the harm caused by Defendants' fraudulent scheme and false statements, even if Nassau County does comply with its indemnification obligation.

## CLAIMS

### CLAIM I
### Violation of New York Judiciary Law § 487(1)

122.    Plaintiffs hereby incorporate by reference all of the foregoing paragraphs and further allege as follows:

123.    The misconduct described herein was perpetrated by Nassau County as well as Individual Defendants in their roles as attorneys for Nassau County, employed by the Nassau County Attorney's Office. Individual Defendants were acting within the scope of their employment and/or as agents of Nassau County or the Nassau County Attorney's Office.

124.    Defendants, by making false statements to the court overseeing the Civil Rights Lawsuit, and by making additional false statements in order to conceal the original deceit, did attempt to deceive and did actually deceive the court and Plaintiffs with regards to Nassau County's intent to comply with its indemnification obligations.

125.    Defendants colluded with one another, and with co-conspirators Louis Freeman, Lee Ginsberg, and Nadjia Limani, in order to deceive the court and Plaintiffs.

126.    When making false statements and misrepresenting key facts to the court and Plaintiffs in written statements and orally, Defendants acted with the intent to deceive the court and Plaintiffs.

127.    The deceit perpetrated by Defendants was extreme and outrageous, and Defendants' false statements and misrepresentations fall well outside the bounds of what is permissible in an adversarial proceeding. This deceit is extreme and outrageous because of the length of the fraud; Defendants' behavior demonstrates a repeated pattern of chronic misbehavior, continuing even after they were confronted with evidence of the deceit. This deceit is also extreme and outrageous because of the materiality of the misrepresentations made by Defendants and their knowledge of the harm that the intentional false statements would cause.

128.    Defendants' deceit directly and proximately caused Plaintiffs the damages described above.

## CLAIM II
### Common Law Fraud; Fraud by Concealment; Fraudulent Misrepresentation; Fraudulent Inducement; Aiding and Abetting Fraud

129.    Plaintiffs hereby incorporate by reference all of the foregoing paragraphs and further allege as follows:

130.    Defendants made numerous false statements to Plaintiffs and to the court, which they knew at the time were false, as described above.

131.    As described above, these false statements were material to the Civil Rights Lawsuit, and to decisions that Plaintiffs made with regard to that lawsuit.

132.    Defendants made these false statements with the intent of inducing Plaintiffs to rely on those statements, and Plaintiffs did indeed rely on Defendants' misrepresentations and false statements to their detriment.

133.    The relationship between Defendants and Plaintiffs John Restivo and Dennis Halstead as opposing attorneys and/or parties to a lawsuit, and the relationship between the court overseeing the Civil Rights Lawsuit and Defendants as attorneys or parties to that suit, created a

25

special relationship whereby, once Plaintiffs and the Court demanded such information, Defendants had a duty to disclose to Plaintiffs and the Court the nature of its indemnification obligation and its intent to comply with that obligation. Defendants knowingly concealed this information.

134.    Each of the Defendants had knowledge of this fraud and provided substantial assistance to one another, and to co-conspirators Louis Freeman, Lee Ginsberg, and Nadjia Limani, in perpetrating this fraud and the concealment of the fraud.

135.    Defendants' fraudulent, false statements and concealment of material facts directly and proximately caused Plaintiffs to suffer damages as described above.

## CLAIM III
### Breach of Contract

136.    Plaintiffs hereby incorporate by reference all of the foregoing paragraphs and further allege as follows:

137.    The Indemnity Agreement between Nassau County and Joseph Volpe is an enforceable contract.

138.    Plaintiffs John Restivo and Dennis Halstead are third-party beneficiaries of the contract, as Nassau County and Joseph Volpe entered into the Indemnity Agreement in order to indemnify Volpe for damages stemming from the specific claims brought by John Restivo and Dennis Halstead in the Civil Rights Lawsuit. The financial benefit that Restivo and Halstead would receive pursuant to the contract, in the event they won a judgment against Volpe, was an intended—not incidental—benefit created by the contract.

139.    The parties to the contract, Nassau County and Joseph Volpe, each exchanged valuable consideration upon entering into the contract. Nassau County agreed to fully indemnify

Joseph Volpe in connection with the Civil Rights Lawsuit, and Mr. Volpe agreed to give Nassau County full control over the direction of said litigation.

140.    Joseph Volpe and his legal successor in interest, Carolann Hesseman as Executrix of the Estate of Joseph Volpe, fully performed Volpe's duties under the contract.

141.    The contract created a duty for Nassau County to fully indemnify Joseph Volpe and his Estate for any damages, interest, costs, or fees associated with the Civil Rights Lawsuit.

142.    Nassau County did not perform its duties under the contract. Instead, Nassau County breached its duty to Joseph Volpe and the Estate of Joseph Volpe by stating that it would refuse to indemnify Carolann Hesseman as Executrix of the Estate of Joseph Volpe in connection with the Civil Rights Lawsuit.

143.    Nassau County's breach of the Indemnity Agreement directly and proximately caused Plaintiffs the damages described above.

### CLAIM IV
### Intentional, Reckless, or Negligent Infliction of Emotional Distress

144.    Plaintiffs hereby incorporate by reference all of the foregoing paragraphs and further allege as follows:

145.    The improper, deliberate, and traumatizing conduct of Defendants in deliberately causing, or recklessly disregarding the risk of causing, Plaintiffs to rely on their misrepresentations and the concomitant severe emotional distress, was extreme and outrageous, and directly and proximately caused the injuries and damages set forth above.

146.    In the alternative, Defendants negligently and grossly negligently, and in breach of their duties owed to Plaintiffs to, *inter alia*, respond to Plaintiffs' Civil Rights Lawsuit truthfully and in good faith, and to refrain from knowingly lying to the parties and the Court during the pendency of the suit, directly and proximately caused Plaintiffs' injuries.

147.    The Individual Defendants engaged in these acts within the scope of their employment.

148.    These claims are tolled as to the extent the defendants concealed from Plaintiffs—and still are concealing to this day—their conduct giving rise to this cause of action.

## CLAIM V
### Negligence and Negligent Misrepresentation

149.    Plaintiffs hereby incorporate by reference all of the foregoing paragraphs and further allege as follows:

150.    Defendants are liable for negligence, having breached their duty of reasonable care to John Restivo and Dennis Halstead. Specifically and by way of example, these Defendants made material misstatements of fact while defending Nassau County and certain Nassau County employees in the Civil Rights Lawsuit instituted by Plaintiffs.

151.    Defendants also negligently failed to have or adhere to adequate policies and procedures for truthfully litigating claims against Nassau County and/or its agents. These negligent acts led to hundreds of hours of otherwise unnecessary litigation and caused Plaintiffs to take certain actions—or refrain from taking certain actions—while litigating the Civil Rights Lawsuit.

152.    Defendants' negligence and gross negligence directly and proximately caused Plaintiffs' injuries.

153.    Defendants engaged in these acts within the scope of their employment.

154.    These claims are tolled as to the extent the defendants concealed from Plaintiffs—and still are concealing to this day—their conduct giving rise to this cause of action.

**CLAIM VI**
**Conspiracy**

155.    Plaintiffs hereby incorporate by reference all of the foregoing paragraphs and

further allege as follows:

156.    Defendants agreed with one another, and with co-conspirators Louis Freeman,

Lee Ginsberg, and Nadjia Limani, to commit the tortious acts described herein.

157.    Defendants each intentionally committed a number of overt acts, including but not

limited to making false statements and/or directing others to make false statements, in

furtherance of the agreement to commit the tortious acts described herein.

158.    Defendants' participation in the conspiracy was intentional.

159.    The conspiracy to commit the tortious acts described herein, as well as the

tortious acts themselves, directly and proximately caused the damages and injuries to Plaintiffs

described above.

**CLAIM VII**
***Respondeat Superior* Claim Against Nassau County,**
**the Nassau County Attorney's Office, and Carnell Foskey**

160.    Plaintiffs hereby incorporate by reference all of the foregoing paragraphs and

further allege as follows:

161.    At all times relevant to this Complaint, Defendants LoCurto, Miller, Van der

Waag, Mendelson, Ben-Sorek, and Ferguson acted as agents of Nassau County and the Nassau

County Attorney's Office, in furtherance of the business, including law enforcement functions, of

the Nassau County and the Nassau County Attorney's Office, and within the scope of their

employment or agency with Nassau County and the Nassau County Attorney's Office.

162.    At all times relevant to this Complaint, outside counsel for Nassau County Lou

Freeman, Lee Ginsberg, and Nadjia Limani, acted as agents of Nassau County and the Nassau

County Attorney's Office, in furtherance of the business, including law enforcement functions, of the Nassau County and the Nassau County Attorney's Office. All acts undertaken by Freeman, Ginsberg, and/or Limani were taken at the direction and under the control of, based on communications with, and in cooperation with Nassau County and the individual Defendants.

163.    The conduct by which the Defendants committed each of the torts complained of herein was not undertaken for these Defendants' personal motives, but rather was undertaken while these Defendants were acting pursuant to their duties to Nassau County and the Nassau County Attorney's Office, carrying out their routine litigation functions as attorneys.

164.    Under the doctrine of *respondeat superior*, Nassau County and the Nassau County Attorney's Office are liable for their agents' state law torts complained of herein.

**WHEREFORE**, John Restivo and Dennis Halstead pray as follows:

A.   That the Court award damages to them and against the defendants, jointly and severally, in an amount to be determined at trial, up to 129 million dollars;

B.   That the Court award treble damages to them pursuant to Judiciary Law § 487, and against all defendants, in an amount to be determined at trial, that will punish such conduct and deter such conduct by defendants in the future;

C.   For a trial by jury;

D.   For pre-judgment and post-judgment interest and recovery of their costs, including reasonable attorneys' fees to the extent provided for by law; and

E.   For any and all other relief to which they may be entitled.

Respectfully submitted,

Dated:    New York, New York
          May 16, 2016                    /s/ Anna Benvenutti Hoffmann
                                          Nick Brustin
                                          Anna Benvenutti Hoffmann
                                          Alexandra Lampert
                                          Julia L. Torti
                                          NEUFELD SCHECK & BRUSTIN, LLP
                                          99 Hudson Street, 8th Floor
                                          New York, New York 10013
                                          (212) 965-9081
                                          **Attorneys for Plaintiffs John Restivo and**
                                          **Dennis Halstead**